## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| VERONICA K.S., | CV 20–146–M–DWM |
| Plaintiff, | |
| v. | OPINION and ORDER |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits under Title II of the Social Security Act, and for Supplemental Security Income benefits under Title XVI. The Commissioner's denial of benefits is affirmed.

### LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Id.* (internal quotation marks omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a

1

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the ALJ. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving that disability exists. 42 U.S.C. § 423(d)(5). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if her impairments are so severe that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other substantial gainful activity in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In determining disability, the ALJ follows a five-step sequential evaluation

2

process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process begins, at the first and second steps, "by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.* "If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functioning capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." *Id.* At step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

## BACKGROUND

On March 27, 2018, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. AR 212–18. She also filed for Supplemental Security Income benefits under Title XVI on April 20, 2018. AR 220–29. The onset date for both applications was October 6, 2017. *See* AR 212, 220. Both claims were initially denied on June 13, 2018, AR 142–45, and upon reconsideration on September 28, 2018, AR 150–55. Plaintiff filed a written

request for hearing, AR 157–58, which was held on November 15, 2019, by

Administrative Law Judge ("ALJ") Michele M. Kelley, *see* AR 35–74. Plaintiff

testified, as did vocational expert Karen S. Black. *See id.* Plaintiff was

represented by an attorney. *Id.*

On December 16, 2019, the ALJ issued a decision denying benefits. AR 15-

28. Plaintiff was 51 years old at the time of the ALJ's decision. AR 26. At step

one, the ALJ found Plaintiff met the insured status requirements of the Social

Security Act through September 30, 2022. AR 16, 18. She also found Plaintiff has

not engaged in substantial gainful activity since October 6, 2017, the alleged onset

date. AR 18. At step two, the ALJ found Plaintiff had the following severe

impairments: degenerative disc disease of the spine; left shoulder impingement

syndrome; traumatic brain injury with migraine; neurocognitive disorder (post

concussive syndrome); depression; neurodevelopmental disorder (verbal

proceeding/learning deficits/ADHD); and somatic symptom disorder. *Id.* The ALJ

also determined that Plaintiff was diagnosed with obesity, but concluded it was

non-severe. *Id.* At step three, the ALJ found Plaintiff did not have an impairment

or combination of impairments that meets or medically equals the severity of one

of the listed impairments. AR 18–20.

The ALJ found Plaintiff had a residual functioning capacity ("RFC") to

perform light work, specifically:

4

She can lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally; can only lift and carry a maximum of eight pounds with the left upper extremity alone; cannot reach overhead with the left upper extremity; can only frequently reach overhead with the right upper extremity; can walk and stand about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; needs to avoid concentrated exposure to extreme cold, vibration and avoid even moderate exposure to hazards, including wet, slippery, uneven surfaces, unprotected heights, and dangerous machinery; can understand, remember, and carry out simple and detailed tasks of limited complexity but should not be required to do any significant new learning that would be presented verbally; can maintain attention, concentration, persistence, and pace for eight-hour workdays and forty-hour workweeks but should be able to take normal work breaks at every two hours; can tolerate interaction with supervisors, coworkers, and the public, but cannot tolerate close, constant interaction with others as part of work duties (ie. no work in tandem with coworkers and no work directly with the public as part of work duties); can tolerate usual, simple, and detailed work situations; can tolerate occasional changes in routine work settings. All limitations are sustained work activities on a regular and continuing basis unless otherwise specified.

AR 20.  Based on this RFC, the ALJ determined at step four that Plaintiff can perform past relevant work as a housekeeper and laundry worker.  AR 26.  At step five, the ALJ found that Plaintiff could perform other work existing in the national economy—sewing machine operator, clothing presser, and office helper—even if Plaintiff's "limitations erode the unskilled light occupational base."  AR 26–27.  The ALJ therefore concluded that Plaintiff was not disabled.  AR 27.

On August 3, 2020, the Appeals Council denied Plaintiff's request for review, AR 1–3, making it a final decision.  *Brewes v. Comm'r of Soc. Sec.*

5

*Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  On September 18, 2020, Plaintiff appealed that decision to this Court.  (Doc. 1.)  The Commissioner filed the certified administrative record on December 23, 2020.  (*See* Doc. 7 (attachments).)  The matter was fully briefed as of April 5, 2021.  (*See* Docs. 13, 14, 15.)

## ANALYSIS

Plaintiff suffered a head injury in January 2017 when she slipped on ice while working as a housecleaner.  She continued to work until October 2017 but had spinal injuries and cognitive deficits arising out of her fall.  Those impairments, *inter alia*, form the basis of her claim for benefits.  This case is unique in that the breadth of the medical records is matched only by the dearth of citations to those records in Plaintiff's briefing.  Rather, Plaintiff repeatedly argues error as to broad issues and findings without linking those arguments to either the medical evidence or the specific findings of the ALJ.  Equally unpersuasive is Plaintiff's disparaging tone as to both the ALJ's decision and the Commissioner's briefing.  These elements combine to hinder judicial review.  Ultimately, the ALJ's non-disability determination is supported by substantial evidence.

## I.    Mental Impairments

Plaintiff first argues that the ALJ failed in her "special duty" to fairly consider Plaintiff's mental impairments.  More specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's mental limitations following her January 2017

6

fall and head injury and did not mention Plaintiff's history of depression. As a

preliminary matter, the Commissioner persuasively argues that this contention is

divorced from any specific finding by the ALJ. In the absence of such a challenge

it is unclear how the ALJ's perceived failure affected her ultimate disability

conclusion. But even considering Plaintiff's challenges at face value, the ALJ's

finding regarding Plaintiff's mental impairments are supported by substantial

evidence. In the context of her step three analysis, the ALJ found that Plaintiff's

mental impairments revealed only moderate or mild limitations in the four

functional areas. 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter App. 1) at

§ 12.00(A)(2)(b); AR 19. In so finding, the ALJ relied on the function report that

Plaintiff herself filled out in May 2018, *see* AR 260–69, as well as numerous

clinical observations regarding her "normal behavior and good judgment," *see,*

*e.g.*, AR 480–81, 484, 493, 893–94.

That said, Plaintiff's argument regarding depression has some foundation in

the record. Plaintiff is correct that there are references to depression throughout

the medical records, *see* AR 418, 420–22, 620, including that in March 2018 she

went to the emergency room after overdosing on medication "with the intent to kill

herself," AR 929. But, the ALJ did not disregard those records and identified

"depression" as one of Plaintiff's severe impairments, *see* AR 18, and she

considered Plaintiff's impairment in the context of Listing 12.04, which covers

7

depressive, bipolar and related disorders, *see* AR 19.  The ALJ also cited several

records both before and after March 2018 that either reference Plaintiff's

depression or indicate Plaintiff had "an appropriate mood and affect with normal

behavior and good judgment."  *Id.* (citing AR 1054 (Aug. 16, 2018: "Normal

affect"), 1083 (June 1, 2018: describing depression as "improved" and increasing

Wellbutrin dosage), 1044 (May 3, 2018: "alert, no acute distress"), 620 (Apr. 19,

2018: listing history of depression), 893 (Mar. 16, 2018: "Alert, no distress."), 481

(March 13, 2018: "Cooperative. Appropriate mood & affect. Normal judgment."),

484 (Dec. 17, 2017: describing depression as "improved"), 493 (Oct. 12, 2017:

starting Wellbutrin).  Ultimately, while Plaintiff argues that the ALJ must base her

RFC determination on all the relevant records and evidence, she fails to show how

the ALJ did not do so here.

## II.    Listings

At step three of the ALJ's sequential evaluation, the claimant can establish

disability if she proves that her impairments meet or medically equal a listed

impairment in Appendix 1.  *Kennedy*, 738 F.3d at 1175–76.  "Listed impairments

are purposefully set at a high level of severity because 'the listings were designed

to operate as a presumption of disability that makes further inquiry unnecessary.'"

*Id.* at 1176 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  Put differently,

"[t]he listings define impairments that would prevent an adult, regardless of his

age, education or work experience, from performing *any* gainful activity, not just
'substantial gainful activity.'" *Zebley*, 493 U.S. at 532 (quoting 20 C.F.R.
§ 416.925(a) (1989)).  Thus, a claimant must show that she meets "*all* of the
specified medical criteria" for a specific listing as "[a]n impairment that manifests
in only some of those criteria, no matter how severely, does not qualify."  *Id.* at
530 (footnote omitted).

    Here, Plaintiff argues that the ALJ erred in finding that she did not qualify
for a listing related to her (1) cervical spine condition or (2) mental impairments.
Neither argument is persuasive.  Nor is Plaintiff's continued indictment of the
Commissioner's citation to proper legal authority.

### A.    Listing 1.04 – Cervical Spine

    The ALJ determined that Plaintiff's cervical spine condition did not meet the
listing for 1.04 on the grounds that "claimant's back impairment has not resulted in
significant nerve root compression, motor loss or weakness, an inability to
ambulate effectively, or an inability to perform fine or gross movements
effectively as described in the listing."  AR 18.  She further found that that
Plaintiff's shoulder impairment did not meet the requirements for listing 1.02,
explaining that "claimant's impairments have not resulted in an inability to
perform fine and gross movements effectively as defined in 1.00 B2c."  AR 19.
Plaintiff agrees with the ALJ's conclusion regarding her shoulder but argues that

her cervical spine condition meets Listing 1.04 and that ALJ erred by considering a "back impairment" and confused the elements for 1.04 and 1.02. Neither argument is persuasive.

First, while the ALJ does use the term "back impairment" in her analysis, she does so only after specifically referring to Plaintiff's "spine impairment." *See* AR 18. While the ALJ could have been more precise, there is no indication that she misunderstood the nature of Plaintiff's injury. To the contrary, as step two the ALJ found that Plaintiff's "degenerative disc disease of the spine" was a severe impairment. *See id.*

Second, any error the ALJ made in assessing Listing 1.04 was harmless. Listing 1.04 requires a finding of disability for a claimant who: (1) has a disorder of the spine, such as degenerative disc disease, (2) that results in "compromise of a nerve root . . . or the spinal cord," and (3) which is accompanied by the additional requirements set forth under subsections 1.04(A), 1.04(B), or 1.04(C). *See* App. 1, § 1.04. Here, Plaintiff argues that 1.04(A) is the appropriate listing in this case, which requires:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the low back, positive straight-leg raising test (sitting and supine).

And, because 1.04(A) does not specify a shorter durational period, the claimant

10

must establish that the impairment meeting the Listing has lasted or can be expected to last for a continuous period of at least 12 months.  *See* 20 C.F.R. § 416.925(c)(4).

As Plaintiff argues, noticeably absent from the inquiry under Listing 1.04(A) is any consideration of a claimant's ability to perform fine or gross movements. But even if the ALJ improperly relied on a finding that Plaintiff could not perform such movements, that error was harmless as Plaintiff has not demonstrated that she has met all the Listing's remaining criteria.  Even assuming that Plaintiff's January 2017 CT scan, *see* AR 432, and her March 2017 MRI, *see* AR 442–46, demonstrate nerve root compression, Plaintiff fails to identify medical support for limitation of motion and/or motor loss.  To the contrary, the ALJ noted that her "brain MRI was normal, an MRI of her cervical spine revealed only mild to moderate findings, and cervical flexion and extension x-rays revealed normal alignment with no subluxation or fracture."  AR 21 (citing AR 443, 445, 451–52). The ALJ further found that a May 2017 examination revealed "no significant limitations with range of motion, intact sensation, normal reflexes, normal cervical strength, and a normal gait."  *Id.* (citing AR 611).  And the ALJ also recognized that Plaintiff continued to have "intact reflexes" and showed "no motor deficits." AR 22 (citing AR 1912).  That conclusion is supported by other medical evidence in the record.  *See, e.g.*, AR 480 ("[n]ormal motor function"), 484 (same), 493

(same), 894 ("[n]ormal range of motion"), 1054 ("reflexes within normal limits").

Because she carries the burden, Plaintiff's failure to establish the requisite

sensory or reflex loss for a continuous 12-month period is also dispositive. *See*

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (finding no error where

claimant did "not set forth any evidence which would support the diagnosis and

findings of a listed impairment"). Plaintiff's challenge under Listing 1.04(A)

therefore fails.[1]

## B.    Mental Impairments – 12.00

Without making any specific arguments regarding the Listing, Plaintiff

argues that the ALJ's failure to adequately consider her mental impairments "led to

inadequate consideration of the Listings found at section 12.00 *et.seq.* [sic]" (Doc.

13 at 22.) That generalized challenge is insufficient to permit judicial review as

Plaintiff does not even identify which Listing she believes is implicated. *See*

*Burch*, 400 F.3d at 683. To the extent Plaintiff bases this argument on her more

general challenge to the ALJ's assessment of her mental impairments—discussed

above—that challenge is without merit.

---

[1] In her reply, Scott points out that the Commissioner incorrectly referenced a "hip
impairment and obesity" in its conclusion. (*See* Doc. 15 at 11 (citing Doc. 14 at
18).) There is no indication that the Commissioner considered the wrong
impairments in the substantive analysis.

### III.   Medical Opinions

Plaintiff further challenges the ALJ's assessment of her treating physicians, specifically the opinions of Matt McNutt, FNP; Patrick Davis, Ph.D.; and Kelly Pearce, Ph.D.   While claims filed before March 27, 2017 were subject to a "treating physician rule" that circumscribed review of and gave more weight to the opinions of treating doctors, *see Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), the regulations have since been updated to eliminate that deference, *see* 20 C.F.R. § 416.920c(a).   As recognized by Plaintiff, the applicable regulations require the ALJ to consider the following factors in reviewing prior medication opinions: supportability, consistency, relationship to claimant, and specialization, as well as a treatment provider's familiarity with the disability program.   *See* § 416.920c(c). The most important factors are supportability and consistency.   § 416.920c(b)(2). Plaintiff argues that while Commissioner "takes a long time to educate Plaintiff and this Court on matters of law we already knew regarding adoption of the regulatory scheme, . . . Defendant is unable to . . . demonstrate how the ALJ followed these regulations."   (Doc. 15 at 5–6.)   But as argued by the Commissioner, Plaintiff's "vague[] challenges" lack merit.   (Doc. 14 at 13); *see Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs." (internal quotation marks omitted)).

### A.  McNutt

McNutt evaluated Plaintiff for her workers' compensation claim following her fall in January 2017.  *See* AR 753–54, 837–39, 1078–80, 1821–23, 1957.  The ALJ considered McNutt's records, but did not find them persuasive "as many are based on the worker's compensation standards of 'more probable than not'" and because McNutt "provides no reasonable explanation or function-by-function assessment as to how these conclusions were reached."  AR 25.  Plaintiff's challenge to the ALJ's weighing of this evidence fails for several reasons.  First, the ALJ's concise assessment of McNutt's opinion directly implicates a number of factors identified in § 416.920c(c), including the purpose of McNutt's treatment relationship and its disconnect from the disability framework.  The ALJ also correctly identified that the cited records are all in a "form" or "checkbox" format, providing little additional observation or support.  Plaintiff argues that the ALJ ignored the fact that McNutt's opinions are supported by the opinions of the two orthopedic surgeons to which he referred Plaintiff.  But, the ALJ specifically referenced the treatment and opinions of both John Hammerstein, MD and Anthony Russo, MD, the orthopedic surgeons at issue.  *See* AR 25.  Accordingly, the ALJ did not err in her consideration of McNutt's opinion evidence.

### B.  Davis

The ALJ also found Davis's opinion unpersuasive.  AR 24.  Davis, a

psychologist, also assessed Plaintiff in connection with her workers' compensation claim, focusing on her cognitive function. *See* AR 1822–23. He opined that Plaintiff would have challenges if she was expected to learn and apply new information in a time sensitive manner, and that written instructions and repetition may be sufficient to help her succeed occupationally in jobs, which involve repetitive, routine tasks. *See* AR 24. He further opined that if a job were "simple enough" further treatment may not be necessary. *Id.* The ALJ found Dr. Davis' opinion unpersuasive because even though a finding of diminished cognitive function was consistent with the other evidence in the record, "the opinion is vague as to what 'simple enough' means" given Plaintiff's ability to perform certain jobs in the past and the lack of evidence of deterioration of her mental condition. *Id.* Plaintiff's only real argument on this front is that there is no medical evidence that contradicts Davis's opinion and the record as a whole supports her disability claim. (*See* Doc. 15 at 7–8.) But, as pointed out by the Commissioner, that argument is somewhat self-defeating. While the AJL must "consider the record as a whole," "[i]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098.

That is the record here. The state non-examining physicians all concluded that Plaintiff had mild to moderate limitations on her cognitive abilities but could do "work of limited complexity." *See, e.g.*, AR 84–85, 98–100, 112–18, 132–34.

These records also indicate that her condition has not deteriorated. *See generally, id.* Plaintiff's general challenge and reliance on Davis does not undermine these conclusions. Because the record supports the ALJ's conclusion, the Court must defer to that conclusion even if the evidence also could support an alternative finding.

### C. Pearce

Finally, Plaintiff argues that her earlier evaluation by Pearce corroborated Davis's findings, and therefore the ALJ's rejection of that opinion was in error. In September 2017, Pearce issued a six-page neuropsychological evaluation of Plaintiff based on three in-person sessions. *See* AR 417–22. That evaluation contains several findings—including reduced verbal comprehension, difficulty with attention, concentration, learning, memory, and language—as well as numerous treatment recommendations—need for a vestibular evaluation, functional vision evaluation, further counseling, Wellbutrin for depression, exercise, and sleep therapy. *See id.* The ALJ did not find Pearce's opinion persuasive, however, "because she is vague as to what 'difficulty' means in the terms of function-by-function abilities and limitations" and because of Plaintiff's previous job performance and non-deterioration of her condition as evaluated by the non-examining state consultants. AR 24–25. The ALJ also considered the fact that Plaintiff lives independently, does household chores and cares for her son, as

16

well as performs daily activities and drives for an extended period of time. *See* AR

23. At the end of the day, the ALJ found that Plaintiff had cognitive limitations,

but that those limitations did not prevent her from being able to perform certain

work functions. In the absence of a more specific challenge to that conclusion,

substantial evidence supports the ALJ's determination.

Moreover, while the ALJ found both Davis's and Pearce's opinions

unpersuasive, neither Davis nor Pearce opined that Plaintiff's mental condition

prevented her from performing any work under any circumstances. To the

contrary, Pearce recognized that her "Executive Functions" were normal and

offered a tableau of treatment options to help improve her overall cognitive

function. *See* AR 421. Likewise, Davis opined that written instructions and

repetition "may be sufficient to help her succeed occupationally in jobs which

involve repetitive routine tasks." *See* AR 1822. Thus, it is unclear whether the

ALJ's assessment would be any different even if she had embraced either Davis's

or Pearce's opinions outright.

Ultimately, the ALJ's analysis shows that she considered the relevant factors

identified in § 404.1420c and the record provides substantial evidence to support

her conclusion.

## IV.    Credibility

Finally, Plaintiff argues that the ALJ erred in her assessment of Plaintiff's

credibility. "In assessing the credibility of a claimant's testimony regarding

subjective pain or the intensity of symptoms, the ALJ engages in a two-step

analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by*

*reg. on other grounds*. "First, the ALJ must determine whether there is objective

medical evidence of an underlying medical impairment which could reasonably

expected to produce the pain or other symptoms alleged." *Id.* (internal quotation

marks omitted). Second, "[i]f the claimant has presented such evidence, and there

is no evidence of malingering, the ALJ must give specific, clear and convincing

reasons in order to reject the claimant's testimony about the severity of the

symptoms." *Id.* (internal quotation marks omitted). In so deciding, the ALJ "may

use ordinary techniques of credibility evaluation" and consider whether the

claimant's symptoms are inconsistent with his daily activities. *Id.* at 1112–13

(internal quotation marks omitted).

Here, Plaintiff argues that the ALJ's reasons for rejecting her testimony "are

just not clear nor convincing." (Doc. 13 at 26.) Rather, "[i]t is clear that [the ALJ]

did not understand the basic facts of the case and seemed hell bent upon denying

benefits to a woman who would drive her car for an hour and a half to rendezvous

with her significant other." (*Id.*) But once again, Plaintiff's general challenge to

the ALJ's overall conclusion impedes meaningful judicial review. The ALJ

considered the fact that Plaintiff returned to work for nine months after her injury

18

and that Plaintiff engaged in daily and routine activities that belied limited function. AR 23. But, contrary to Plaintiff's argument, such consideration was appropriate. *Molina*, 674 F.3d at 1112–13. Additionally, the ALJ properly considered that Plaintiff was not always compliant with treatment, *see* AR 22, 537, 623; *Molina*, 674 F.3d at 1113–14, and Plaintiff's condition improved over time when she was being treated, AR 22, 1817, 1897, 1908; *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). And, as discussed above, the ALJ considered the diagnosis, observation and limitations outlined by Plaintiff's treating providers in assessing her functionality.

Ultimately, the ALJ relied on clear and convincing evidence that undercut Plaintiff's subjective assessment of her functional abilities.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Commissioner's denial of benefits is AFFIRMED.

DATED this 21st day of July, 2021.

12:17 P.M.

Donald W. Molloy, District Judge
United States District Court

19